IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH L. WASHINGTON, JAMES F. SOLIC, JAMES WASHINGTON, JR., LAURA M. ODELL, and ARLENE BETH CLARKE, | § § § § § § | No. 436, 2016 Court Below: Court of Chancery of the State of Delaware |
| Plaintiffs Below, Appellants, | § § § | C.A. No. 10810-VCL |
| v. | § § | |
| PREFERRED COMMUNICATION SYSTEMS, INC., | § § § § | |
| Defendant Below, Appellee. | § § § | |

Submitted: February 15, 2017
Decided: February 27, 2017

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **REVERSED.**

Evan O. Williford, Esquire, Andrew J. Huber, Esquire, The Williford Firm LLC, Wilmington, Delaware; Dennis M. Holmgren, Esquire, (*Argued*), Holmgren Johnson: Mitchell Madden, LLP, Dallas, Texas, for Appellants Joseph L. Washington, James F. Solic, James Washington, Jr., Laura M. Odell, and Arlene Beth Clarke.

Gary W. Lipkin, Esquire, (*Argued*), Aimee M. Czachorowski, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware, for Appellee Preferred Communication Systems, Inc.

**STRINE**, Chief Justice:

## I.

In this case, noteholders succeeded in securing warrants that the issuer of the notes had promised as a result of the resolution of a previous event of default. When addressing the merits, the Court of Chancery held that the promise of warrants had become a right of the noteholders under the notes, as amended after the default. For that reason, the Court of Chancery awarded the noteholders the warrants they sought. The noteholders then sought to recover their attorneys' fees based on a fee-shifting provision in the notes which entitled the noteholders to attorneys' fees if: (1) "any indebtedness" evidenced by the notes was collected in a court proceeding; or (2) the notes were placed in the hands of attorneys for collection after default. But, the Court of Chancery denied this request and the noteholders brought this appeal. Because the warrants are a form of indebtedness that the noteholders had to collect through an action in the Court of Chancery, the noteholders are entitled to attorneys' fees. The noteholders are also entitled to attorneys' fees because they had to seek the assistance of counsel to collect the warrants after default.

## II.

In 2006, the appellants (or "Noteholders" for simplicity's sake) invested in promissory notes (the "Notes") issued by the appellee, Preferred Communication Systems, Inc. In exchange for their investment, they were promised repayment of

1

principal and interest, plus warrants upon execution of the Notes. When the Notes came due in 2007, Preferred Communication was unable to pay and defaulted. Therefore, Preferred Communication sought to satisfy the noteholders by promising them additional consideration if they would forgo remedies for default under the Notes. Preferred Communication sent a written offer (the "Offer Letter") to the noteholders presenting them with two alternatives, one of which promised additional warrants (the "Extension Warrants") in exchange for the noteholders extending the repayment date of the Notes indefinitely.[1] The appellant Noteholders accepted Preferred Communication's offer by returning an acceptance letter that stated:

> Please repay my principal and interest under the Note as soon as the Company determines it has sufficient cash to pay the Note. The maturity date of my note is hereby extended to the date such repayment is made, with the understanding that in return for the extension I will receive warrants for 225 shares of Class B Common Stock ($5.00 exercise price and five year exercise term) for every month between the original maturity date of my Note and the time the Note is repaid as described in the First Action. The warrants will be cumulated and issued to me on the date the Note is repaid in full.[2]

A plain reading of this amendment to the Notes indicates that when Preferred Communication repaid the Notes, in addition to paying principal and interest, it was also required to issue the Extension Warrants.

---

[1] The second option provided that the noteholders could convert their Notes into Series B Preferred Stock.

[2] App. to Appellant's Opening Br. at A87 (Ex. 2 to Plaintiffs' First Amended Complaint, dated May 15, 2015) [hereinafter Offer Letter].

In 2013, Preferred Communication sold most of its assets to Sprint Corporation for approximately $60 million, which triggered its obligation to pay off the Notes, as amended by the Offer Letter. Certain noteholders, including the appellant Noteholders, sued Preferred Communication in Texas, bringing claims to collect their principal, interest, and Extension Warrants. Preferred Communication and the Texas plaintiffs settled the claims for outstanding principal and interest in exchange for an immediate cash payment, and they agreed to litigate the claim for the Extension Warrants in the Court of Chancery. The settlement agreement stated that the Noteholders "shall retain any claim to fees and costs related to their claim for warrants incurred after the [the effective date of the settlement agreement] to be paid, if at all, in accordance with the terms of the [Notes]."[3]

The Noteholders then moved for summary judgment in the Court of Chancery, arguing that Preferred Communication breached its obligations under the Notes by failing to issue the Extension Warrants. The Court of Chancery granted the motion in part,[4] explaining "*[t]he contract at issue consists of the Notes*

---

[3] *Id.* at A162 (Ex. 17 to Plaintiffs' First Amended Complaint, dated May 15, 2015) [hereinafter Settlement Agreement].

[4] The Court of Chancery granted summary judgment in favor of seven plaintiffs. *Id.* at 269–71 (Order Granting in Part Plaintiffs' Motion for Summary Judgment, dated June 4, 2015) [hereinafter Summary Judgment Order]. After newly discovered evidence was brought to the attention of the Court of Chancery, it vacated the partial summary judgment order as to three plaintiffs and entered summary judgment in favor of one plaintiff. *Washington et al. v. Preferred Communication*, C.A. No. 10810 (Del. Ch. Sept. 10, 2015) (ORDER). The Noteholders comprise the five plaintiffs who ultimately obtained summary judgment in their favor. The

3

*as modified by the Offer Letter*,"[5] and Preferred Communication "failed to issue the Extension Warrants, resulting in breach."[6] The Court of Chancery concluded that "[Preferred Communication] *promised warrant coverage as a component of the plaintiffs' return* and is now obligated to provide it."[7] Preferred Communication did not appeal this ruling.

Thereafter, the Noteholders filed a motion seeking attorneys' fees and expenses for fees incurred in the Court of Chancery action.[8] They based their argument for fees exclusively on the first sentence of Section 6.2 of the Notes—the fee-shifting provision.[9] Section 6.2 provides:

> *Should **any indebtedness evidenced by this Note** be collected by* action at law, or in bankruptcy, receivership, or *other court proceedings, or should this Note be placed in the hands of attorneys for collection after default, Maker agrees to pay,* upon demand by Holder, in addition to principal and interest and other sums, if any, due and payable hereon, *court costs and reasonable attorneys' fees and other reasonable collection charges.* Should Maker be required to bring any action to enforce its rights under this Note, it shall be

remaining plaintiffs dismissed their claims. *Washington et al. v. Preferred Communication*, C.A. No. 10810 (Del. Ch. Mar. 4, 2016) (ORDER).

[5] App. to Appellant's Opening Br. at A266 (Summary Judgment Order) (emphasis added).

[6] *Id.* at A272.

[7] *Id.* at A275 (emphasis added).

[8] Preferred Communication paid the attorneys' fees incurred in the Texas action as part of the settlement agreement. *Id.* at A162 (Settlement Agreement).

[9] The Noteholders' motion for fees stated: "The Notes at issue each contain one-sided fee shifting provisions. Plaintiffs, as successful parties, are entitled to recover their fees and costs. [Preferred Communication] is not entitled to recover costs and fees from the dismissed plaintiffs because it did not bring an action to enforce its rights under the Notes." *Id.* at A326 (Plaintiffs' Motion for Fees and Expenses, dated June 21, 2016).

entitled to an award of its court costs and reasonable attorneys' fees in such action.[10]

The Court of Chancery originally granted the Noteholders' request for fees of $166,313.26, but, in doing so, relied on the second sentence of Section 6.2. The Court of Chancery explained:

> Section 6.2, entitled "Collection," contains two sentences. The first deals with the indebtedness evidenced by the Note and the collection of that indebtedness. The second is broader. It states, "Should Maker be required to bring any action to enforce its rights under this Note, it shall be entitled to an award of its court costs and reasonable attorneys' fees in such action." The right to the Extension Warrants was a right that the Maker received under the Note. This action was brought to enforce that right. [Preferred Communication] has a fair point that this enforcement action did not fall within the first sentence. Instead, it fell within the second sentence.
>
> The court has reviewed the fees and expenses sought. They are reasonable given the nature and scope of the action. In the context presented, they are adequately supported.[11]

Preferred Communication then filed a motion for reargument, arguing that the second sentence of Section 6.2 only permitted fees in favor of Preferred Communication. The Noteholders responded respectfully by attempting to defend the Court of Chancery's ruling as to the second sentence of Section 6.2 by the only reasoning that they could,[12] but they primarily argued that the Court of Chancery

---

[10] *Id.* at A78 (Ex. 1 to Plaintiffs' First Amended Complaint, dated May 15, 2015) [hereinafter Promissory Note] (emphasis added).

[11] Ex. A to Appellant's Opening Br. (Order Granting Plaintiffs' Motion for Fees and Expenses, dated July 12, 2016).

[12] The Noteholders alleged that "[i]n relying on the second sentence of Section 6.2 to award attorneys' fees, the Court correctly followed a trend towards mutual fee-shifting provisions."

5

should uphold its award of attorneys' fees based on the first sentence of Section 6.2, as they had originally urged in their motion for fees and expenses.

But, the Court of Chancery instead granted Preferred Communication's motion—thereby reversing itself—and explained:

> The two sentences in Section 6.2 are worded differently. The second is broader, but it grants rights only to the Maker. The movant is correct that the Maker is the defendant, not the plaintiff. The plaintiff's fee-shifting rights extend only to collection efforts.[13]

On appeal, the Noteholders argue that the Court of Chancery erred in interpreting Section 6.2. The first sentence of Section 6.2 provides that fee shifting will occur if either of two conditions is satisfied: (1) "[s]hould *any indebtedness* evidenced by this Note be collected by action at law, or in bankruptcy, receivership, or other court proceedings"; or (2) "should this Note be placed in the hands of attorneys for collection after default."[14] The Noteholders argue that both conditions were satisfied here, providing two bases for their recovery.

First, the Noteholders argue that Preferred Communication's failure to issue the Extension Warrants created a debt, which the Noteholders collected through a court proceeding. The Noteholders allege that—contrary to Preferred

App. to Appellant's Opening Br. at A357 (Plaintiffs' Opposition to Defendant's Motion for Reargument, dated July 25, 2016). As explained at oral argument, the Noteholders were "surprised" by the Court of Chancery's reasoning when it originally granted the fee request based on the second sentence of Section 6.2. Oral Argument at 5:32, *Washington, et al. v. Preferred Communication*, No. 436, 2016 (Del. Feb. 15, 2017) [hereinafter Oral Argument].

[13] Ex. B to Appellant's Opening Br. (Order Granting Defendant's Motion for Reargument under Rule 59(f), or, Alternatively, for Relief from Clerical Error or Oversight under Rule 60(a)).

[14] App. to Appellant's Opening Br. at A78 (Promissory Note) (emphasis added).

Communication's assertion—the term "any indebtedness" is a broad term that easily encompasses the Extension Warrants.

Even if the term "any indebtedness" originally only applied to principal and interest, as Preferred Communication suggests, the Noteholders maintain that it still encompasses the Extension Warrants because the Notes, as amended by the Offer Letter, promised the Noteholders the Extension Warrants as part of their return in exchange for them extending the maturity date of the Notes indefinitely. Indeed, the Court of Chancery found that "[t]he contract at issue consists of the Notes as modified by the Offer Letter."[15] And, as the Court of Chancery also found, "[Preferred Communication] promised warrant coverage *as a component of the plaintiffs' return* and is now obligated to provide it."[16] Thus, the Noteholders argue that "any indebtedness" includes the Extension Warrants, and, therefore, they are entitled to attorneys' fees because they were forced to collect an indebtedness evidenced by the Notes through a court proceeding.

Second, the Noteholders argue that Section 6.2 applies because Preferred Communication was in default by not issuing the Extension Warrants, and the Notes were placed in the hands of attorneys for collection. Section 5 of the Notes—which defines "Event of Default"—includes "Maker fail[ing] to duly observe, perform or comply with *any covenant, agreement or provision* of this

---

[15] *Id.* at A266 (Summary Judgment Order).
[16] *Id.* at A275 (emphasis added).

7

Note . . . and such failure remains umremedied for a period of ten (10) days after written notice of such failure is given by Holder to Maker."[17] Under the Notes, as amended by the Offer Letter, Preferred Communication was required to issue the Extension Warrants to the Noteholders at the time it repaid the Notes. And, as the Court of Chancery found, Preferred Communication failed to issue the Extension Warrants at that time, resulting in a breach of its obligations under the Notes. Thus, the Noteholders maintain that Preferred Communication defaulted by not issuing the Extension Warrants and, therefore, they are entitled to attorneys' fees incurred in collecting the Extension Warrants.

Preferred Communication argues that the Noteholders are not entitled to attorneys' fees because, under the Notes as originally drafted, "any indebtedness" and "collection" only apply to monetary amounts, and the Offer Letter did not amend Section 6.2 to include attorneys' fees for the Extension Warrants. Preferred Communication asserts that because Section 6.2 states "Maker agrees to pay . . . *in addition to principal and interest and other sums*," it only permits fee-shifting when the Noteholders collect certain monetary amounts—not warrants.[18] And, because the Notes as originally drafted promised warrants upon execution, Section 6.2 could have been drafted to include "principal and interest and warrants and other sums," but it was not. Thus, Preferred Communication maintains that the

---

[17] *Id.* at A78 (Promissory Note) (emphasis added).
[18] *Id.* (emphasis added).

term "any indebtedness" does not encompass the Extension Warrants. Preferred Communication also argues that even if the Extension Warrants did constitute indebtedness, they were not "evidenced by the Notes" because the Extension Warrants were promised in the Offer Letter, which was an "ancillary agreement."[19] Finally, Preferred Communication asserts that the use of the term "collection"— which is commonly used to refer to the collection of monetary amounts—indicates that fee shifting does not apply to an action to compel Preferred Communication to issue warrants.

We agree with the Noteholders. The Court of Chancery found that "[t]he contract at issue consists of the Notes as *modified* by the Offer Letter."[20] Thus, the Notes were modified to include the Extension Warrants. And, by its plain terms, the first sentence of Section 6.2 of the Notes entitles the Noteholders to attorneys' fees incurred in enforcing the Notes in the Court of Chancery.

The first half of the first sentence of Section 6.2 entitles noteholders to attorneys' fees "[s]hould *any indebtedness* evidenced by this Note be collected by action at law, or in bankruptcy, receivership, or other court proceedings."[21] Here, the Noteholders filed suit in the Court of Chancery to enforce their rights to the Extension Warrants. Preferred Communication's insistence that the Extension

---

[19] Appellee's Answering Br. at 15.
[20] App. to Appellant's Opening Br. at A266 (Summary Judgment Order) (emphasis added).
[21] *Id.* at A78 (Promissory Note) (emphasis added).

Warrants do not qualify as indebtedness is unconvincing. The Noteholders were promised the Extension Warrants as consideration in exchange for extending the maturity date of the Notes indefinitely after Preferred Communication defaulted. The fact that this consideration was in the form of additional warrants and not a specific sum of money is irrelevant. Preferred Communication was required to issue the Extension Warrants at the time it repaid the Notes, and, as the Court of Chancery found, its failure to do so resulted in a breach. Thus, Preferred Communication was indebted to provide the Noteholders their Extension Warrants.

Equally applicable to the Noteholders' argument is the latter half of the first sentence of Section 6.2, which entitles noteholders to attorneys' fees if "this Note be placed in the hands of attorneys for collection after default."[22] Section 5 of the Notes defines default as—in addition to failure to pay principal or interest—the failure to "observe, conform or comply with any covenant, agreement or provision of this Note."[23] As the Court of Chancery found, under the Notes, as amended by the Offer Letter, the Noteholders were promised Extension Warrants, which Preferred Communication was required to issue "on the date the Note is repaid in full."[24] And, as the Court of Chancery also found, "[Preferred Communication] has repaid the [Notes] but failed to issue the Extension Warrants, resulting in

---

[22] *Id.*
[23] *Id.*
[24] *Id.* at A87 (Offer Letter).

10

breach."[25]   By failing to issue the Extension Warrants at the time it repaid the Notes, Preferred Communication defaulted because it failed to "observe, conform or comply with any covenant, agreement or provision of this Note."[26]   Thus, the Noteholders are entitled to the attorneys' fees they incurred in bringing a suit to force Preferred Communication to issue the Extension Warrants.

Finally, we do not find convincing Preferred Communication's argument that the Noteholders cannot recover their attorneys' fees because the Extension Warrants do not qualify as "other sums" under Section 6.2, which states "[s]hould any indebtedness evidenced by this Note be collected by action at law . . . Maker agrees to pay, upon demand by Holder, *in addition to principal and interest and other sums*, if any, due and payable hereon, court costs and reasonable attorneys' fees and other reasonable collection charges."[27]   The Notes were amended to include the Extension Warrants in exchange for the Noteholders extending the maturity date of the Notes indefinitely.  Thus, although Section 6.2 may not have originally encompassed warrants, once the Notes were amended, Preferred Communication owed the Noteholders not just principal and interest, but also the Extension Warrants.

---

[25] *Id.* at A72 (Summary Judgment Order).
[26] *Id.* at A78 (Promissory Note).
[27] *Id.*

11

Preferred Communication tries to narrow the broad and undefined term "any indebtedness" to only monetary amounts by arguing that originally the only indebtedness under the Notes was principal and interest because the original warrants the Notes promised were issued at the time the Notes were executed. Thus, Preferred Communication argues that the capacious phrase "any indebtedness" does not in fact mean that, but only means any indebtedness in the form of monetary payments of principal and interest. In arguing this point, Preferred Communication admits that, when the Noteholders were encouraged by Preferred Communication to defer the enforcement of their rights for principal and interest by extending the maturity date of the Notes indefinitely in exchange for the Extension Warrants, Preferred Communication did not tell the Noteholders that if they would have to pursue Preferred Communication in the context of a future default to recover the Extension Warrants, that the plain promise of attorneys' fees in Section 6.2 would not be applicable.[28] Preferred Communication also further admits that the Noteholders would not have found it comforting if the company had told them that they would not have the advantage of the fee-shifting provision of Section 6.2 if they had to chase down Preferred Communication to get the

---

[28] Oral Argument at 24:21-26:00.

12

Extension Warrants, and they might not have been willing to give Preferred Communication breathing room to address its original default.[29]

By its use of the clear term "any indebtedness," the first sentence of Section 6.2 promises the Noteholders that they will be able to recover for their enforcement efforts if they have to secure that payment in court. The fact that part of the first sentence refers to the most obvious form of indebtedness does not undercut the reality that the Extension Warrants promised to the Noteholders in the Notes, as amended by the Offer Letter, are plainly a form of indebtedness. The Court of Chancery's own summary judgment ruling, which Preferred Communication has not appealed, recognizes that inescapable reality.

Likewise, although the term "collection" might be most usually associated with collecting on the principal and interest under a note, it also sensibly can be understood as applying in any situation when a noteholder has been promised payments of any kind under a note and must take action to enforce that promise. After the Offer Letter amended the Notes, the Noteholders were due not just principal and interest, but also the Extension Warrants. In our view, Preferred Communication's attempt to narrow the plain words of the promise it made to the Noteholders is unconvincing and requires us to carve out exceptions to the unambiguous terms of Section 6.2. Furthermore, when Preferred Communication

---

[29] *Id.* at 27:20.

13

entered into the settlement agreement with the Noteholders in resolving the Texas litigation, at no point did it suggest that by separating the claim for the Extension Warrants from the claims for principal and interest that the Noteholders would lose the ability to secure their attorneys' fees. Indeed, the settlement agreement itself stipulated that none of the releases or dismissals in the agreement had any effect on "any claim by the [Noteholders] for future *collection costs* incurred with respect to their outstanding claims for warrants."[30]

In any event, Preferred Communication is also poorly positioned to argue this point for another reason. The undisputed record indicates that Preferred Communication drafted both the Notes and the Offer Letter that amended the Notes without negotiating with the Noteholders. Even if the Notes, as amended by the Offer Letter, are somehow ambiguous, the Noteholders have offered a reasonable interpretation of Section 6.2 that supports an award of fees to them. Because any ambiguity must be resolved against Preferred Communication, Preferred Communication would still owe the Noteholders their attorneys' fees and costs even if its reading of Section 6.2 was plausible.[31]

---

[30] App. to Appellant's Opening Br. at A160 (Settlement Agreement) (emphasis added). Notably, Preferred Communication suggested at oral argument that had the claim for the Extension Warrants not been separated from the claims for principal and interest, the Noteholders may have been able to collect all of their attorneys' fees because it would have been difficult for a court to carve out the fees attributable to the Extension Warrants and a court may have been unwilling to do so. Oral Argument at 19:20.

[31] *See Bank of N.Y. Mellon v. Commerzbank Capital Funding Trust II*, 65 A.3d 539, 551 (Del. 2013) (noting that ambiguities in a contract will be resolved against the drafter).

For the foregoing reasons, the judgment of the Court of Chancery is reversed and the matter is remanded to the Court of Chancery to enter an award of attorneys' fees for the fees incurred in litigating the merits of the case plus the fees incurred in litigating the fee request.